UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-21499

THOMAS BODKIN,

      Plaintiff,

v.

MSC CRUISES, S.A.,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR TRIAL BY JURY

Plaintiff, THOMAS BODKIN ("Plaintiff"), through undersigned counsel, sues Defendant,

MSC CRUISES, S.A. ("Defendant"), and demands trial by jury, stating as follows:

## PARTIES AND JURISDICTION

1.    Plaintiff seeks damages in excess of $75,000.00, exclusive of interest, costs and

attorney's fees.

2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C.§ 1333.

3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in

controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between

citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4.    Suit is filed in federal court because of the federal forum selection clause in the

passenger contract ticket issued by Defendant.

5.    Plaintiff is *sui juris* and is a resident and citizen of the state of New York.

6.    Defendant is a foreign corporation who is authorized to conduct and who does

conduct business in the state of Florida, who at all times material hereto was and is doing business

in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7.     Defendant is a citizen of the State of Florida and the nations of Italy and Switzerland.

8.     Defendant, at all times material hereto, personally or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.     Operated, conducted, engaged in or carried on a business venture; and/or

      b.     Had an office or agency; and/or

      c.     Engaged in substantial activity; and/or

      d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the stairs, and all material and effects pertaining thereto, including the nosing, risers, treads, and/or other parts thereof, the surfaces thereof, the handrails, the stairs' and surface's lighting, design, and/or visual condition, and/or any other material, and/or the ship's stabilizing fins/mechanisms.

11.     At all times material hereto, Defendant owned, leased, chartered, operated, maintained, managed, and/or controlled the cruise ship, the *Seashore*, which is registered under the flag of Malta.

12.     At all times material hereto, Defendant owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area and the vicinity involved in Plaintiff's incident.

13.    Plaintiff's incident occurred on or about April 6, 2022, while Plaintiff was a fare paying passenger on Defendant's vessel, the *Seashore*.

14.    On or about April 6, 2022, Plaintiff was descending the spiral staircase in the lobby of the yacht club between approximately deck 18 and deck 16, and missed a step and fell on stairsteps that were unreasonably shiny (creating an optical illusion and straining Plaintiff's eyes), uneven, non-uniform in dimensions (including width, height, depth, angles, and otherwise), curvy, poorly maintained, lacking adequate visual cues to help passengers see each step (such as yellow or other conspicuous tape/signs/stickers/coloring/other cues), and/or otherwise unreasonably dangerous.

15.    Plaintiff was using the handrail when descending the stairs. However, the handrails were inadequate to prevent or mitigate Plaintiff's incident.

16.    The lighting was also unreasonably dark in that the lighting casted shadows that made it difficult for Plaintiff to decern that the stairs were dangerous prior to his fall.

17.    As a result, Plaintiff missed a step, fell, and suffered severe injuries.

18.    The dangerous conditions included, but are not limited to, the following:

a.    The stairsteps Plaintiff fell on were unreasonably shiny (creating an optical illusion and straining Plaintiff's eyes); and/or

b.    The stairsteps Plaintiff fell on were unreasonably curvy; and/or

c.    The stairsteps Plaintiff fell on were unreasonably poorly maintained; and/or

d.    The stairsteps Plaintiff fell on were uneven and not uniform in dimensions (including width, height, depth, angles, and otherwise), which unreasonably hindered Plaintiff's body's ability to step safely down the subject stairsteps; and/or

e.    The stairsteps Plaintiff fell on lacked adequate visual cues to help passengers see each

step (such as yellow or other conspicuous tape/signs/stickers/coloring/other cues);
and/or

f.  The lighting was unreasonably dark such that it casted shadows that made it difficult
for Plaintiff to decern that the steps Plaintiff fell on were dangerous prior to Plaintiff's
fall; and/or

g.  Plaintiff was holding the handrail when descending the stairs, but the handrail was
inadequate to prevent or mitigate Plaintiff's incident; and/or

h.  The fact that Defendant did not have crew members and/or reasonably trained
crewmembers adequately supervising the subject area at the time; and/or

i.  The subject stairs should have been closed to the public until they were safe for
passengers' use; and/or

j.  People fell on these stairs prior to Plaintiff's incident for similar reasons as Plaintiff;
and/or

k.  Other dangerous conditions that will be revealed through discovery.

19.    Each of these dangerous conditions alone was sufficient to cause Plaintiff's incident and
injuries, and Plaintiff is alleging that Defendant was negligent as to each of these conditions.

20.    Defendant either knew or should have known of these risk creating and/or dangerous
conditions, due to reasons that include, but are not limited to, the following:

a.  There was a sign/signs in the subject area that said "watch your step" (or in the
alternative, something similar to the same effect), but a reasonable person would not
have been able to see this sign while stepping down the steps.

b.  Furthermore, the dangers were and/or should have been known prior to Plaintiff's
incident because Plaintiff had seen Defendant's crewmembers use the subject area

and stairs prior to his incident such that they should have been familiar with the dangers thereof, and Defendant should have been aware of these conditions ever since it took possession of the ship.

c.  Previous passengers suffered prior incidents involving falls on the subject ship or other ships in its fleet, including, but not limited to, the Plaintiff in *Goldstein v. MSC Cruises, S.A.*, Case No. 0:18-cv-61348-WPD, *Hodson v. MSC Cruises, S.A.*, 1:20-cv-22463-FAM (involving a similar stairway), *Melaih v. MSC Cruises, S.A.*, Case 0:20-cv-61341-RS, *Lorenzo-Garcia v. MSC Cruises, S.A.*, Case 1:20-cv-23552-DPG, *Milana v. MSC Cruises, S.A.*, Case 1:20-cv-21482-CMA, and *Rivera v. MSC Cruises, S.A.*, 1:22-cv-21386-KMM.

d.  Upon information and belief, Defendant participated in the installation and/or design of the subject stairs, railing, and lighting, Defendant accepted and/or leased/chartered the ship, stairs, railing, and lighting with these design defects present after having been given an opportunity to inspect the ship and the materials on it, including the subject stairs and lighting, such that Defendant should have known of the design defects of the subject stairs before providing them for use by the public. These design defects include, but are not limited to, their unreasonably shininess, unevenness, non-uniformity in dimensions, curviness, lack of adequate visual cues to help passengers see each step, darkness/shadows/lack of lighting, dangerous handrails, and/or other defects that will be revealed in discovery.

e.  Upon information and belief, there are relevant safety standards/recommendations/other guidelines regarding the safety of the subject stairs and its surfaces, shininess, unevenness, non-uniformity in dimensions, curviness, lack

of visual cues, lighting, and handrails, including, but not limited to, the proper amount of shininess permitted, the proper visual cues for them, the proper uniformness/curvature/dimensions for them, the proper lighting for them, the proper handrails for them, and their proper functionality, and Defendant should have known of these standards because whether such standards are legally required for Defendant to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done.

f.   Defendant also knew or should have known of these dangerous conditions through inspecting the subject area and the vicinity involved in Plaintiff's incident, and if it did not know of these dangerous conditions, this was because it failed to adequately inspect the subject area and the vicinity involved in Plaintiff's incident.

g.   Moreover, Defendant knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

21.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, outdated, improperly designed, improperly installed, and/or otherwise unsafe.

22.   The subject area and the vicinity lacked adequate safety features to prevent Plaintiff's fall.

23.   These hazardous conditions were known, or should have been known, to Defendant in the exercise of reasonable care.

24.   These hazardous conditions existed for a period of time before the incident.

25.   These conditions were neither open nor obvious to Plaintiff.

26.    At all times relevant, Defendant failed to adequately inspect the subject area and the vicinity for dangers, and Defendant failed to adequately warn Plaintiff of the dangers.

27.    At all times relevant, Defendant had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so, such that people, including Plaintiff, fell on the subject stairs.

28.    At all times relevant, Defendant failed to maintain the subject area and the vicinity in a reasonably safe condition.

29.    At all times relevant, Defendant participated in the design and/or approved the design of the subject area and the vicinity involved in Plaintiff's incident.

30.    At all times relevant, Defendant participated in the installation and/or approved the installation of the subject area and the vicinity involved in Plaintiff's incident.

31.    The crewmembers of the *Seashore* were in regular full-time employment of Defendant and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

32.    Defendant had the right to hire and fire their employees and/or agents.

33.    Defendant is directly responsible and liable for their actions and the actions of its employees and/or agents.

34.    The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of Defendant, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

35.    The crewmembers were represented to Plaintiff and the ship's passengers as employees of Defendant through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or an hourly wage by Defendant. Defendant knew that the crewmembers represented themselves to be employees of Defendant and allowed them to represent themselves

as such. Plaintiff detrimentally relied on these representations as she would not have proceeded on the subject cruise had she believed the crewmembers were not employees of Defendant.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT, CLEAN, MAINTAIN, REPAIR, REMEDY,**
**AND/OR TAKE OTHER REASONABLE MEASURES FOR THE SAFETY OF**
**PLAINTIFF**

36.   Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35 as if set forth herein.

37.   Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

38.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting, cleaning, maintaining, repairing, and/or remedying the subject area and the vicinity, and/or making other efforts to make sure the subject area and the vicinity were safe for the use and enjoyment of its passengers.

39.   At all times material, Defendant, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant breached the duty of reasonable care owed to Plaintiff and were negligent by failing to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, such that the risk creating and/or dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint were present at the time of Plaintiff's incident.

40.   These risk creating and/or dangerous conditions were caused by design defects and/or by Defendant's failure to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 8 of 17**

41.   Defendant's failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, was either due to its failure to adequately inspect the subject area and the vicinity prior to Plaintiff's incident to ensure they were in a reasonably safe condition, or due to its failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, despite its knowledge of the dangerous conditions, which posed a risk to its passengers.

42.   In addition, Defendant either knew or should have known of these risk-creating and/or dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

43.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

44.   Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred.

45.   As a result of Defendant's negligence, Plaintiff has suffered severe bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

46.   The losses are either permanent or continuing in nature.

47.   Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, THOMAS BODKIN, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injuries, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO WARN**

48.    Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35 as if set forth herein.

49.    At all times relevant, Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including Plaintiff.

50.    Such duty includes, but is not limited to, the duty that Defendant owes to warn passengers of any dangers that it knew or should have known that were not open and obvious to Plaintiff.

51.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards which passengers may reasonably be expected to encounter.

52.    At all times material, Defendant, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant, breached the duty of reasonable care owed to Plaintiff and was negligent by failing to warn Plaintiff of the dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint.

53.    Furthermore, Defendant knew or should have known of these dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

54.    These dangerous conditions were also created by Defendant.

55.    Defendant either failed to adequately inspect the subject staff, area, and the vicinity to ensure that there were no dangerous conditions that passengers needed to be warned of, or Defendant failed to warn Plaintiff despite knowing of the dangers.

56.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

57.    These dangerous conditions existed for a period of time before the incident.

58.    These conditions were neither open nor obvious to Plaintiff.

59.    Defendant's breach was the cause in-fact of Plaintiff's great bodily harm in that, but for Defendant's breach, Plaintiff's injuries would not have occurred.

60.    Defendant's breach proximately caused Plaintiff great bodily harm in that the incident that occurred was a foreseeable result of Defendant's breach.

61.    As a result of Defendant's negligence, Plaintiff has suffered severe bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

62.    The losses are either permanent or continuing in nature.

63.    Plaintiff has suffered these losses in the past and will continue to suffer such loses in

the future.

**WHEREFORE**, Plaintiff, THOMAS BODKIN, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injuries, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY**

64.     Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

65.     At all times material hereto, Defendant owed a duty to its passengers, and in particular to Plaintiff, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in the "Definitions and Factual Allegations" section of the instant complaint, as well as to design and install reasonable safeguards.

66.     At all times material hereto, Defendant participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and put the vessel on which Plaintiff was injured into the channels of trade, and/or Defendant approved of the subject vessel's design, including the design of the subject area and the vicinity.

67.     At all times material hereto, Defendant manufactured, designed, installed, and/or approved of the *Seashore*, including providing specifications to the shipbuilder in the original build

process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular to Plaintiff, to design, install and/or approve of the subject area and the vicinity without any defects.

68.    At all times material hereto, Defendant through its agents and/or employees who were acting in the course and scope of their employment and/or agency with Defendant MSC CRUISES, S.A., designed, installed, and/or approved of the subject area and the vicinity involved in Plaintiff's incident, which was also in violation of the applicable industry standards/recommendations/and/or other guidelines.

69.    Defendant provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

70.    Defendant maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Seashore*, during the new build process.

71.    Defendant has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

72.    Defendant has the right to inspect and reject design elements before taking possession of the ship.

73.    At all times material hereto, Defendant knew or had reason to know the subject area and the vicinity involved in Plaintiff's incident were unreasonably dangerous for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

74.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to

maritime travel, and as such were "clearly linked to nautical adventure."

75.    However, Defendant permitted the dangerous conditions to be present in the subject area and the vicinity without correcting these design deficiencies, and did not design and install reasonable safeguards.

76.    The design flaws that made the subject area and the vicinity involved in Plaintiff's incident unreasonably dangerous were the direct and proximate cause of Plaintiff's injuries.

77.    Defendant is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in Plaintiff's incident, which it knew or should have known of.

78.    Defendant failed to correct and/or remedy the defective conditions despite the fact that it knew or should have known their danger.

79.    As a result of Defendant's negligence, Plaintiff has suffered severe bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

80.    The losses are either permanent or continuing in nature.

81.    Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, THOMAS BODKIN, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injuries, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of

life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENCE FOR THE ACTS OF DEFENDANT'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY

82.   Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

83.   Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its patrons.

84.   The people who were working in and/or who were and/or should have been responsible for inspecting, maintaining, designing, and/or approving the subject area, were agents of Defendant for the following reasons:

85.   They were the staff and/or employees of Defendant, or were Defendant's agents, apparent agents, and/or servants.

86.   These staff, employees, and/or agents were subject to the right of control by Defendant.

87.   These staff, employees, and/or agents were acting within the scope of their employment or agency.

88.   Defendant acknowledged that these staff, employees, and/or agents would act on Defendant's behalf, and they accepted the undertaking.

89.   Defendant is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in the "Definitions and Factual Allegations" section of the instant complaint.

90.   This negligence proximately caused Plaintiff great bodily harm in that, but for this

negligence, Plaintiff's injuries would not have occurred.

91.    As a result of Defendant's negligence, Plaintiff has suffered severe bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

92.    The losses are either permanent or continuing in nature.

93.    Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, THOMAS BODKIN, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injuries, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, THOMAS BODKIN, demands trial by jury on all issues so triable.

**Dated:** May 16, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 16 of 17**

aivey@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***